UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | |
| DRG FUNDING CORPORATION | : | Civil Action No. 1:07-CV-01420-JR |
| | : | |
| U.S. DEPARTMENT OF HOUSING AND | : | On Appeal from the |
| URBAN DEVELOPMENT, | : | United States Bankruptcy Court |
| | : | for the District of Columbia |
| Appellant, | : | |
| | : | Bankruptcy Case No. 94-00417 |
| v. | : | Chapter 7 |
| | : | |
| WENDELL W. WEBSTER, Trustee, | : | |
| | : | |
| Appellee, | : | |
| | : | |
| NEW ENGLAND PHOENIX CO., INC., | : | |
| | : | |
| Appellee-Intervenor. | : | |

BRIEF ON APPEAL FOR THE APPELLEE-INTERVENOR
NEW ENGLAND PHOENIX CO., INC.

David K. Monroe, Bar No. 358763
GALLAND KHARASCH GREENBERG
FELLMAN & SWIRSKY, PC
1054 Thirty-First Street, NW
Washington, DC 20007-4492
Telephone:    202/342-5200
Facsimile:    202/342-5219
Email:        dmonroe@gkglaw.com

John M. Keough
NEW ENGLAND PHOENIX COMPANY, INC.
337 Freeport Street
Boston, MA 02122
Telephone:    617/288-0612

Attorneys for Appellee-Intervenor
NEW ENGLAND PHOENIX COMPANY, INC.

## TABLE OF CONTENTS

.                                                                                    Page

Table of Authorities……………………………………………………………..…… ii

I.       STATEMENT OF THE ISSUE…………………………………………..……... 2

II.      STATEMENT OF THE CASE………………………………………………. 2

III.     STATEMENT OF THE FACTS……………………………………………..… 3

         A.       DRG and the HUD Programs…………………………………………..… 3

         B.       The HUD Judgment, Administrative Offsets, …………………………..… 3
                  And Related Litigation

         C.       The DRG Bankruptcy…………………………………………………... 5

IV.      ARGUMENT………………………………………………………………... 6

V.       CONCLUSION…………………………………………………………….. 13

Certificate of Service…………………………………………………………….. 14

Appendix

         Exhibit 1      Memorandum and Order dated June 12, 1991

         Exhibit 2      Judgment dated June 12, 1991

         Exhibit 3      Judgment dated July 1, 1991, *nunc pro tunc* as of June 12, 1991

i

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Davis Sewing Machine Co. v. United States*, 60 Ct.Cl. 201 (1925)................................ 7, 8

*DRG Funding Corporation v. Secretary of Housing and Urban Development*,
898 F.2d 205 (D.C. Cir. 1990)............................................................................. 3

*DRG Funding Corporation v. Secretary of Housing and Urban Development et al.*,
76 F.3d 1212 (D.C. Cir. 1996)............................................................................. 5

*Erwin v. United States* , 97 U.S. 392 (1878)........................................................ 6

*Export Oil Corp. v. United States*, 64 Ct.Cl. 342 (1928)........................................... 7,8

*Goodman v. Niblack*, 102 U.S. 556 (1880)............................................................ 6

*In re Pottasch Bros. Co.*, 11 F.Supp. 275 (S.D.N.Y.) *aff'd* 79 F.2d 613
(2nd Cir. 1935)............................................................................7, 9, 10, 11

*McKay v. United States*, 27 Ct.Cl. 422 (1892)....................................................... 7

*New Rawson Corp. v. United States*, 55 F.Supp. 291, 293 (D.Mass. 1943)...................... 7, 8

*Rel-Reeves, Inc. v. United States*, 221 Ct.Cl. 263, 606 F.2d 949, 954 (1979)..................... 8

*School Feeding Corp. v. United States*, 221 Ct.Cl. 906 (1979)..................................... 9

*United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 375 (1949)..................... 10, 11

*United States v. Shannon,* 342 U.S. 288, 291 (1952) (*quoting United States
v. Aetna Casualty & Surety Co.*, 338 U.S. at 373)................................................. 11

*Western Pacific Railroad Co. v. United States*, 268 U.S. 271 (1925)...............................6, 8

STATUTES

Anti-Assignment of Claims Act (the "Act") 31 U.S.C. § 3727
................................................................... 2, 6, 7, 8, 9, 10, 11, 13

OTHER MATERIALS

*Collier on Bankruptcy* (15th Ed.) ¶ 541.08[3]....................................................... 7

I.    STATEMENT OF THE ISSUE

Whether the bankruptcy court properly approved the bankruptcy trustee's assignment of a judgment against the government to the estate's largest creditor under the "operation of law" exception to the Anti-Assignment of Claims Act.

II.    STATEMENT OF THE CASE

The successor trustee in this bankruptcy, Wendell Webster (the "Successor Trustee"), filed *Trustee's Motion for Authority to Assign Judgment* for court approval to assign a $4.3 million judgment (the "Judgment") held by the debtor, DRG Funding Corporation ("DRG"), against the U.S. Department of Housing and Urban Development ("HUD") and related federal entities,[1] to New England Phoenix Co., Inc. ("NEPCO"), the bankruptcy estate's largest creditor. HUD opposed the motion, contending it violates the Anti-Assignment of Claims Act (the "Act") 31 U.S.C. § 3727. NEPCO supported the motion to assign the Judgment.

On July 6, 2007, the bankruptcy court (per Teel, J.) entered the *Order Granting Trustee's Motion for Authority to Assign Judgment* (the "Order"). See Bankruptcy Court Docket Entry ("DE") No. 210. Judge Teel's findings and conclusions of law in support of the Order are set forth in the *Memorandum Decision Re Trustee's Motion for Authority to Assign Judgment* (the "Memorandum"), entered on July 6, 2007. DE No. 209.

This appeal of the Order by HUD followed. NEPCO filed a motion to intervene as the real party in interest, which was allowed by this court (per Robertson, J.) on August 22, 2007. Consequently, for the purpose of this appeal, NEPCO is filing the brief for the appellee.[2]

---

[1]    The related federal entities are the Federal Housing Administration and the Government National Mortgage Association.

[2]    NEPCO is informed by the Successor Trustee that he supports NEPCO's brief on appeal, but the Successor Trustee does not expect to file any papers on appeal in order to conserve the bankruptcy estate's limited resources.

III.    STATEMENT OF THE FACTS

    A.    DRG and the HUD Programs

In the 1980's, DRG participated in two federal programs operated by components of HUD: the Federal Housing Administration ("FHA") and the Government National Mortgage Association ("GNMA"). FHA operated a coinsurance program under which DRG was insured for certain losses on defaults of multi-family mortgages held by DRG. GNMA operated a separate program that guaranteed payment to the holders of securities issued by DRG and secured by multi-family mortgages, the so-called mortgage-backed securities program. Memorandum at 2; Affidavit of Kimberly Munson submitted with HUD's *Opposition to Trustee's Motion for Authority to Assign Judgment*, DE No. 183 ("Munson Affidavit"), at 2.

    B.    The HUD Judgment, Administrative Offsets, and Related Litigation

In 1988, DRG sued HUD, FHA, and GNMA in the U.S. District Court for the District of Columbia in the case styled *DRG Funding Corporation v. Secretary of Housing and Urban Development et al.*, Docket No. 88-CV-02202-JHG ("DRG/HUD I"), contending that HUD had underpaid it for insurance proceeds made in the form of interest-bearing debentures under HUD's own regulations. DRG prevailed on appeal and the case was remanded to the district court for entry of judgment. *DRG Funding Corporation v. Secretary of Housing and Urban Development*, 898 F.2d 205 (D.C. Cir. 1990). Memorandum at 2; Munson Affidavit at 3.

On remand, the district court (per Hens Green, J.) on June 12, 1991, entered the Judgment in favor of DRG against HUD, FHA, and GNMA in the sum of $4,379,745.13, which sum was increased by an additional $653,169.58 in pre-judgment interest on July 2, 1991. Memorandum at 2-3; Munson Affidavit at 3; *see* DRG/HUD I Docket Entries Nos. 85, 86, and 87 [copies of

3

Judge Hens Green's *Memorandum and Order* and the Judgment (as amended), dated June 12, 1991, are reproduced in the attached Appendix].

On July 17, 1991 and February 12, 1992, after entry of the Judgment, HUD sent letters to DRG, entitled *Notice of Prior Offset*, that informed DRG that HUD had effected so-called "prior offsets" in the amounts of $3,709,926.55 and $687,515.96, respectively, against the Judgment "should [HUD] ultimately prevail in its offset proceeding." Each offset notice states that it is made "pending completion of the offset procedures required by § 17.102." The last paragraph of each notice reads: "Please note that §17.103(b)(2) provides that any amounts that are the subject of prior offset, but later found not to be owed to the Secretary, will be refunded promptly." Exhibits 2 and 4, attached to Munson Affidavit; Memorandum at 3.

The sums allegedly owed to HUD – about $5.8 million in total -- are set forth as one-line items under the heading "*Amount Due from DRG to FHA*" and involve six real estate projects. No further explanation or documentation was provided to DRG by HUD to substantiate these alleged debts. The offsets are calculated based upon certain intra-governmental reimbursements allegedly made by FHA to GNMA and, therefore, any records supporting the offsets are within the control of HUD, not DRG. *See* Munson Affidavit ¶20 and Exhibits 2 and 4, attached thereto.

In 1992, DRG filed a further action in the U.S. District Court for the District of Columbia seeking to compel payment of the Judgment and obtain a ruling on the legality of HUD's administrative offsets. *DRG Funding Corporation v. Secretary of Housing and Urban Development et al.*, Docket No. 92-2868 ("DRG/HUD II"). The district court (per Hens Green, J.) declined to reach the merits of the dispute, finding that HUD's administrative process was not final. See *Memorandum and Order*, dated April 7, 1994. The U.S. Court of Appeals for the

4

District of Columbia Court affirmed, *DRG Funding Corporation v. Secretary of Housing and Urban Development et al.*, 76 F.3d 1212 (D.C. Cir. 1996), reasoning that:

> Neither the ALJ nor the designee has ruled yet on the validity of the debts themselves. Thus, while the designee has tentatively affirmed HUD's authority to collect such debts by offset, she has yet to consider whether the corporation owes the government anything. This is no small matter. If HUD's administrative reviews ends with the conclusion that the corporation has no debt to HUD, the corporation will have no reason to seek judicial determination of the proper procedure for collecting one.

*Id.* at 1215. Memorandum at 4; Munson Affidavit at 5.

### C.    The DRG Bankruptcy

On April 19, 1994, DRG filed for Chapter 7 bankruptcy. On June 20, 1994, David McC. Esterbrook was appointed Chapter 7 Trustee (the "Initial Trustee") in the bankruptcy. DE No. 6. On April 17, 1995, following the district court's decision in DRG/HUD II, the Initial Trustee filed a motion seeking relief from the automatic stay in order to permit HUD and its related judgment debtors to complete their administrative offset process. DE No. 29. On May 11, 1995, the bankruptcy court (per Teel, J.) entered the *Order Modifying Automatic Stay*, which terminated the automatic stay for HUD, FHA, and GNMA for the purpose of "commencing, continuing or completing any administrative review, any civil action, or any other administrative or judicial process or appeal, that is appropriate, necessary or (in the Government's discretion) advisable" relating to their alleged administrative offsets. DE No. 35. HUD has never completed its administrative offset process or come to any "final" agency decision on (i) whether it has the authority to collect its debts via offset, or (ii) the amount of any debt allegedly owed by DRG. Enforcement of the Judgment against HUD has been effectively stayed due to HUD's failure to reach a "final" administrative decision.

On August 16, 2006, the Successor Trustee filed *Trustee's Motion for Authority to Assign Judgment* (the "Motion to Assign") seeking court approval to assign the Judgment to NEPCO.

5

DE No. 146.  NEPCO is the largest creditor in DRG's bankruptcy, holding a claim in the

principal sum of $4,219,701.56, which proof of claim was originally filed by the Resolution

Trust Corporation as receiver for Reilly Mortgage Group.  DE No. 89 (*Notice of Transfer of*

*Claim* filed by NEPCO).

HUD opposed the Motion to Assign in several papers filed with the bankruptcy court,

contending that it would violate the Act, 31 U.S.C. § 3727.  DE Nos. 151, 173, 176, 183, 199,

and 206.  NEPCO filed a memorandum in support of the Motion to Assign, arguing that the

proposed assignment was within the "by operation of law" exception to the Act.  DE No. 185.

After hearing oral arguments on July 3, 2006, the bankruptcy court (per Teel, J.) entered

the Order on July 6, 2007, granting the Successor Trustee's Motion to Assign.  DE No. 210.  This

appeal by HUD seeks reversal of the Order.  DE No. 213.

IV.     ARGUMENT

The Act provides that "a transfer or assignment of any part of a claim against the United

States Government or of an interest in the claim … may be made only after a claim is allowed,

the amount of the claim is decided, and a warrant for payment of the claim has been issued."  31

U.S.C. §3727.  Notwithstanding the broad language of the Act, the Supreme Court recognized

exceptions to the Act for transfers occurring within bankruptcy or insolvency proceedings, which

were deemed to be "by operation of law."  *E.g., Erwin v. United States*, 97 U.S. 392, 397 (1878)

(claims pass to assignees in bankruptcy by operation of law not subject to the Act); *Western*

*Pacific Railroad Co. v. United States*, 268 U.S. 271 (1925) (trustee's sale of assets through

judicial sale was a "transfer of the claims by operation of law" and not prohibited by the Act);

*Goodman v. Niblack*, 102 U.S. 556 (1880) (voluntary assignment for the benefit of creditors no

different from assignment made in bankruptcy and thus not subject to Act).

Lower courts have continued to broaden the operation-of-law exception to embrace a wide range of transfers that occur in bankruptcy, insolvency, receivership, or other court-supervised proceedings, all of which have been held to be outside the scope of the Act. *In re Pottasch Bros. Co.*, 11 F.Supp. 275 (S.D.N.Y.) *aff'd* 79 F.2d 613 (2nd Cir. 1935), cited by the bankruptcy court, held that a compromise agreement between the bankruptcy trustee and a private creditor, in which the creditor received an assignment of claims against the federal government, was valid and binding and not a violation of either the letter or spirit of the Act:[3]

> The trustee suggests that a transfer of the claims against the United States pursuant to order of the court would be void. A transfer by a trustee in bankruptcy of a bankrupt's claim against the United States, pursuant to order of the bankruptcy court, is regarded as a transfer by operation of law and not in violation of the act forbidding assignments of such claims. Such a transfer has no tendency to promote traffic in claims against the United States and is not within the spirit of the statute. (citations omitted)

*Id.* at 277; *see e.g., New Rawson Corp. v. United States*, 55 F. Supp. 291, 293 (D.Mass. 1943) (the Act "does not apply to a transfer of a claim through a judicial sale under order of the court"); *Export Oil Corp. v. United States*, 64 Ct.Cl. 342 (1928) (sale of claim against federal government by special master under court's order not an assignment in contravention of the Act but "well settled" transfer by operation of law); *Davis Sewing Machine Co. v. United States*, 60 Ct.Cl. 201 (1925) (assignment from receiver of insolvent corporation to another corporation of claim against the government, by private sale approved by court, not a violation of the Act); *McKay v. United States*, 27 Ct.Cl. 422 (1892) (purchaser of claim against the federal government at bankruptcy sale held transfer by operation of law and not within the Act); *see generally Collier on Bankruptcy* (15th Ed.) ¶ 541.08[3] ("The provisions of [the Act] do not prevent the claim from becoming property of the estate, nor do they prevent a sale thereof by the trustee").

---

[3]    The court reached this conclusion despite finding that an earlier, pre-bankruptcy assignment by the debtor of the same claims to the same creditor was a violation of the Act.

The operation-of-law exception for transfers in bankruptcy and insolvency has been upheld in the case law without exception. On appeal, HUD fails to cite a single case where a court-approved transfer in bankruptcy or insolvency proceedings was held to violate the Act. And NEPCO is unaware of any such authority. See also *Rel-Reeves, Inc. v. United States*, 221 Ct.Cl. 263, 606 F.2d 949, 954 (1979) ("the development of case law in succeeding years indicates a gradual broadening of the types of transfers excluded from the prohibitory mandate of the [A]ct"). Relying on this wealth of case law, the bankruptcy court approved the assignment of the Judgment by the Successor Trustee to NEPCO on the ground that it was "by operation of law" and thus not prohibited by the Act. Memorandum at 7-8.

On appeal, HUD attempts to distinguish several of the cases relied on by the bankruptcy court without providing any meaningful analysis or acknowledgment of the well-settled, operation-of-law exception. As a result, HUD's distinctions are either niggling or nonexistent. First, HUD contends that four of the cited cases stand for the limited proposition that a claim against the government is outside the Act only when transferred along with other assets, such that the claim merely "followed" with the other assets.[4] According to HUD's inventive argument, a claim against the government does not violate the Act if it is part of a bulk transfer, but runs afoul of the Act if it is transferred alone as a "discrete claim." HUD Brief at 3- 4.

The problem with HUD's bulk-transfer argument is that there is nothing in any of the four cases suggesting that their outcomes were in any way dependent upon the fact that the transfer of the claim against the government happened to involve the transfer of other assets as well. Moreover, HUD suggests no logical reason why a court should treat a claim against the

---

[4]    The four cases are: *Western Pacific Railroad Co. v. United States*, 268 U.S. 271 (1925); *New Rawson Corp. v. United States*, 55 F.Supp. 291, 293 (D.Mass. 1943); *Export Oil Corp. v. United States*, 64 Ct.Cl. 342 (1928); and *Davis Sewing Machine Co. v. United States*, 60 Ct.Cl. 201 (1925).

government contained in a bulk transfer any differently, for purposes of the Act, that one involving the transfer of a "discrete" claim.

Next, HUD attempts to distinguish the bankruptcy court's reliance on *School Feeding Corp. v. United States*, 221 Ct.Cl. 906 (1979). In that case, a judgment debtor's *discrete* claim against the government was transferred to its judgment creditor by sheriff's deed. The court found this transfer to be an exception to the Act by operation of law, and permitted the creditor of the original claimant to sue the government. HUD argues that *School Feeding Corp.* is distinguishable because if the court did not recognize the sheriff's deed as a valid transfer it "would have left no entity the ability to pursue the claim against the United States." But there is simply nothing in the record of that case to suggest that HUD's assertion is either true or relevant. The circumstances that inhibited the original claimant from suing the government, if any, are not discussed by the court and, therefore, cannot be relevant to the court's holding. Indeed, *School Feeding Corp.* demonstrates just how broadly the operation-of-law exception is construed inasmuch as it permitted the original claimant's creditor to sue the government without any apparent court approval of the underlying transfer.[5] Like the plaintiff in *School Feeding Corp.*, NEPCO is a creditor of DRG and should be permitted to seek a final, judicial resolution of the Judgment, which HUD has thus far been able to forestall through its own administrative inaction.

Finally, HUD takes issue with the bankruptcy court's reliance on *In re Pottasch Bros. Co.*, 11 F.Supp. 275 (S.D.N.Y.) *aff'd* 79 F.2d 613 (2nd Cir. 1935), arguing that the actual question before that court was not application of an assigned claim to the Act but "an interpretation of the settlement agreement between the parties." HUD Brief, at 4, 5. But, a

---

[5] It is not stated whether the sheriff's deed was furnished through a judicial or non-judicial process.

9

careful reading of *Pottasch Bros.* demonstrates that HUD is wrong and the bankruptcy court's considered analysis is correct.

*Pottasch Bros.* held that a compromise agreement between the bankruptcy trustee and a private creditor, in which the creditor received an assignment of claims against the federal government, was valid and binding and not a violation of either the letter or spirit of the Act. Consequently, the question before the court certainly was whether or not an assigned claim violated the Act, and not, as HUD suggests, mere interpretation of a private settlement agreement. The only arguable infirmity in the case as authority stems from the fact that the government was not a party to the dispute. However, as explained in the bankruptcy court's detailed analysis, at the time *Pottasch Bros.* was decided, the Act provided that assignments in violation thereof were "absolutely null and void" and, according to the Supreme Court, such assignments were therefore a nullity, not merely unenforceable against the government. It was not until after *Pottasch Bros.* was decided that the "null and void" language was eliminated. Thus, the bankruptcy court correctly concluded that, under the law as it then existed, *Pottasch Bros.* "necessarily held that a claim against the government could be enforced against the government by an assignee holding the claim pursuant to a bankruptcy court order approving the assignment." Memorandum, at 7, note 6.

In the Memorandum, the bankruptcy court observed that "assignments occurring by operation of law are *always* exempt from the prohibition of the Anti-Assignment Act, without regard to whether such an assignment might contravene the purposes of the Act" (emphasis in original), citing *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 375 (1949). Thus, while a discussion of whether the assignment of the Judgment might offend the purposes of the Act is not, strictly speaking, required in order to affirm the Order, we think a brief discussion is

10

helpful to an understanding of this litigation and, importantly, what NEPCO contends is HUD's motivation in opposing the assignment.

The primary purpose of the Act, as interpreted by the Supreme Court, "was undoubtedly to prevent persons of influence from buying up claims against the United States which might be improperly urged against officers of the government" and secondly "to prevent possible multiple payments of claims to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." *United States v. Shannon,* 342 U.S. 288, 291 (1952) (quoting *United States v. Aetna Casualty & Surety Co.*, 338 U.S. at 373).[6] There is no allegation here that NEPCO is a "person of influence" or is attempting to improperly influence the government, so the primary purpose of the Act is clearly not an issue in this case. Memorandum at 9.

Moreover, there is no danger that HUD will face a threat of having to make multiple payments or further investigate the assignment. The assignment of the Judgment to NEPCO was made in the course of closing this bankruptcy case with the approval of the bankruptcy court. "Given HUD's participation in and the overall visibility of the instant proceedings, the proposed assignment does not pose a legitimate risk of inadvertent double payment by the government, nor does it put HUD to the task of investigating whether or not its claim has or has not been assigned." Memorandum at 10. *See Pottasch Bros.*, 11 F.Supp. at 277 (bankruptcy trustee's assignment of claim to creditor "has no tendency to promote traffic in claims against the United States and is not within the spirit of the [Act]").

---

[6]     A further purpose articulated in some of the cases is to preserve the government's right of counterclaim or setoff. *See United States v. Shannon,* 342 U.S. at 292. Indeed, this was HUD's primary argument before the bankruptcy court. *See* HUD's *Reply to Creditor Memorandum in Support of Trustee's Motion for Authority to Assign Judgment.* DE No. 199. Because both NEPCO and the Successor Trustee agreed that the Judgment would be assigned subject to HUD's alleged administrative offsets, and this is reflected in the Order and the Memorandum, this issue has been abandoned by HUD on appeal.

11

Contrary to HUD's repeated assertions, NEPCO is not a "stranger" to the longstanding dispute between DRG and HUD. NEPCO is DRG's largest creditor in bankruptcy,[7] and it is entirely appropriate that it be permitted the opportunity to resolve the Judgment where DRG, due to its bankruptcy, could not.[8] HUD's additional claim that the assignment to NEPCO somehow burdens HUD's ability to access DRG's "books and records" is a red herring. The amount that HUD owes DRG is set in stone in the Judgment. The documents pertaining to HUD's alleged administrative offsets are in the sole possession of HUD, not DRG, because the offsets are based upon intra-agency reimbursements allegedly made by FHA to GNMA. As NEPCO has repeatedly stated: its first order of business is simply to obtain from HUD copies of the documents supporting the administrative offsets and then ask HUD to complete the administrative offset process. HUD's own statements to DRG promise that "any amounts that are the subject of prior offset, but later found not to be owed to the Secretary, will be refunded promptly."

Not surprisingly, HUD prefers to litigate against DRG -- an adversary crippled by bankruptcy -- rather than NEPCO. HUD has thus far been able to escape liability under the Judgment by creating an administrative Catch-22. HUD refuses to pay the Judgment on the grounds of a pending, non-final HUD administrative process, but has chosen not to reach a

---

[7]   In fact, the online docket for DRG/HUD I discloses that the original holder of NEPCO's proof of claim, Reilly Mortgage Group, attempted (unsuccessfully) to intervene in that litigation when the Judgment was entered in 1991. *See* Case 1:88-cv-02202-JHG Docket Entry No. 85.

[8]   HUD also suggests that the Successor Trustee's statement in the Motion to Assign that he was advised that the Judgment is "worthless *to the estate*" (emphasis supplied) is tantamount to a concession that the Judgment has been satisfied by administrative offset. The bankruptcy court rejected this argument noting that, *inter alia*, a bankruptcy trustee may consider "the burden to the estate of liquidating the claim and the uncertainty of the outcome of litigation." Memorandum at 12. Moreover, HUD neglects to point out that the Successor Trustee prefaced his statement by noting that "Since the inception of this bankruptcy case, however, the Initial Trustee has been unable to liquidate, settle or otherwise collect on the judgment." DE No. 146 at 2, ¶3. Because it is in bankruptcy, DRG has been unable to overcome HUD's tactic of administrative inaction, which has permitted HUD to delay indefinitely any judicial determination of the validity of its alleged administrative offsets.

"final" administrative decision. HUD is well aware that neither DRG nor the Successor Trustee has the resources to challenge HUD's attempt to avoid its responsibilities under the Judgment through administrative inaction.    Accordingly, if HUD were successful in defeating the assignment of the Judgment to NEPCO, HUD would effectively escape liability under the Judgment. While there is no danger that HUD will be unfairly burdened by having to deal with NEPCO, or be exposed to multiple liability to multiple parties, there is the very real danger that HUD may be forced, at long last, to defend its questionable use of administrative offsets before a court of law. But that is not a danger from which the Act protects, nor should it be.

V.    CONCLUSION

For all of the above reasons, the bankruptcy court's decision to approve the assignment of the Judgment by the Successor Trustee to NEPCO under the "operation of law" exception to the Act should be affirmed.

Respectfully submitted,

David K. Monroe, Bar No. 358763
GALLAND KHARASCH GREENBERG
FELLMAN & SWIRSKY, PC
1054 Thirty-First Street, NW
Washington, DC 20007-4492
Telephone:    202/342-5200
Facsimile:    202/342-5219
Email:    dmonroe@gkglaw.com

John M. Keough
NEW ENGLAND PHOENIX COMPANY, INC.
337 Freeport Street
Boston, MA 02122
Telephone:    617/288-0612

Attorneys for Intervenor
NEW ENGLAND PHOENIX COMPANY, INC.

DATE:  September _ll_, 2007

13

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the foregoing document was delivered to the following addressees at the addresses stated by depositing same in the United States mail, first class postage prepaid, this 11th day of September, 2007:

Wendell W. Webster, Trustee
WEBSTER FREDERICKSON & BRACKSHAW
1775 K Street, NW – Suite 600
Washington, DC 20036
Telephone:    202/659-8510


Glenn D. Gillett
U.S. DEPARTMENT OF JUSTICE
Civil Division – Room 10018
1100 L Street, NW
Washington, DC 20005
Telephone:    202/514-7162
Email:        glenn.gillett@usdoj.gov

Attorneys for Appellant
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT


Dennis Early
Office of the U.S. Trustee
115 South Union Street – Suite 210
Alexandria, VA 22314
Telephone:    703/557-7176

14

# EXHIBIT 1

09/20/06  WED 09:05 FAX 301 457 7123    WASH NATL REC CTR                    ☑012

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

DRG FUNDING CORPORATION,       )
                              )
              Plaintiff        )
                              )
        v.                     )      Civil Action No. 88-2202 (JHG)
                              )
SECRETARY OF HOUSING AND       )
URBAN DEVELOPMENT, et al.,      )
                              )
              Defendants.       )
                              )

**FILED**

JUN 12 1991

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

### MEMORANDUM AND ORDER

Pending before the Court is plaintiff's motion for reconsideration and application for award of interest, defendants' motion for entry of judgment after remand, and Reilly Mortgage Group, Inc.'s motion for leave to intervene or, in the alternative, to participate as <u>amicus curiae</u>. For the reasons set forth below, plaintiff's motion is granted, defendants' motion is denied, and the motion of Reilly Mortgage Group is denied.

**I**

The factual background of this case need not be set forth here in any detail, as it has been explored elsewhere. <u>See DRG Funding Corp. v. Secretary of HUD</u>, 898 F.2d 205 (D.C. Cir. 1990). Nonetheless, the following brief description is necessary to explain the pending motions and their resolution: Plaintiff ("DRG"), a mortgage banking institution with which defendants ("HUD") coinsured housing loans, filed suit in this Court against



85

HUD because of a dispute over when interest began to accrue on debentures issued in settlement of coinsurance claims. This Court granted HUD's motion for summary judgment. The Court of Appeals, however, reversed and remanded, see id., ruling that, under the applicable regulations, DRG was entitled to interest on the debentures from the date of default, rather than from the date of settlement.

One further fact must be noted: in November 1988, the parties signed a stipulation approved by a Magistrate ("1988 Stipulation") (attached as Exh. 2 to Defendants' Motion for Entry of Judgment after Remand). The 1988 Stipulation (agreed to before the opinions issued from this Court and the Court of Appeals) provides, inter alia, that

> 3) . . . the only amount in controversy in this case is the amount of the debenture interest from the date of default to the date of settlement on the nine claims on which DRG has requested payment in debentures.   On that point, they agree that if DRG finally prevails on its claims in this suit including appeals, it is entitled to payment in that amount (subject to loss sharing limitations required by law - statutory or regulatory) . . . .

## II

Plaintiff has moved for reconsideration of the earlier denial of its motion for partial summary judgment and for entry of judgment on its claims in the amount of $4,379,745.13.   DRG also asks for an award of pre-judgment and post-judgment interest on that amount.   Defendant HUD, while stating that the above figure

2

is the amount to which DRG is entitled, has moved for a judgment permitting it to withhold $3,709,926.55 therefrom while it avails itself of an administrative offset under the Federal Claims Collection Act, 31 U.S.C. § 3711 et seq.

## A. Defendant's Motion for Entry of Judgment After Remand

The Court of Appeals remanded this action to the Court "for proceedings consistent with [its] opinion." 898 F.2d at 209. The Court of Appeals found that the applicable HUD regulations "wholly support appellant's [DRG's] contention that it is entitled to interest from the date of loan default on the debentures." Id. at 207. The parties have reached agreement on what the amount of that interest is. Nonetheless, HUD would have the Court withhold the majority of the money from the judgment the Court must grant in DRG's favor. The Court declines to do so.

HUD proposes that the Court "not preclude HUD 1) from seeking to avail itself of an administrative offset under [FCCA] and 2) from withholding payment . . . to DRG during the pendency of the administrative offset process." Defendants' Motion for Entry of Judgment after Remand, at 2. Clearly, the Court cannot and will not preclude HUD from pursuing whatever administrative remedies it considers necessary. But, there is no basis for this Court to withhold the subject funds while HUD does so. As HUD itself admits, the instant lawsuit "did not involve any issue of administrative offset," id. at 2 n.2, 10, and the Court has "discretion" as to this matter. Id. at 10. This case will not be expanded to include such issues.

3

**B.   Plaintiff's Motion for Reconsideration and
       Application for Award of Interest**

Plaintiff has requested, in addition to entry of judgment and
payment of the debenture interest owed it by HUD, both pre-judgment
and post-judgment interest on that amount.   HUD argues that such
an award is barred by sovereign immunity, by statute, and by the
1988 Stipulation discussed <u>supra</u>.

Ordinarily, interest is not available in judgments against the
United States.    DRG argues that, although there is no express
statutory authorization for pre-judgment interest against HUD,
HUD's sovereign immunity is nonetheless waived in these
circumstances by the "sue and be sued" clause in the enabling
legislation regarding its insurance programs.    <u>See</u> 12 U.S.C. §
1702.    Such clauses are interpreted as waivers of sovereign
immunity and are to be liberally construed, unless expressly
limited.   <u>See</u> <u>generally</u> <u>Loeffler v. Frank</u>, 108 S. Ct. 1965, 1969-
70 (1988) (citing cases).   This "authorization of suits against
federal entities may amount to a waiver of sovereign immunity from
awards of interest when such awards are an incident of suit."
<u>Loeffler</u>, 108 S. Ct. at 1969.

The Supreme Court has recognized only three exceptions to the
rule of liberal construction of such waivers.   The first exception
arises when the waiver would be inconsistent with the statutory
scheme at issue; the second, where it would pose a threat of grave
interference with the government agency's operation; the third,

when it is clear that Congress drew the "sue and be sued" clause narrowly. Id. at 1970. None of these exceptions applies to HUD's coinsurance program.[1]

Defendants nonetheless argue that HUD cannot be liable for interest because the statute does not expressly authorize interest. Defendants' argument is based on Library of Congress v. Shaw, 478 U.S. 310 (1986), where the Supreme Court declared that, absent "express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Id. at 314. That decision seemingly conflicts with Loeffler, but closer examination reveals that it does not: in Shaw, the Supreme Court remarked that there are exceptions to the "no interest" rule, as for example "where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." Shaw, 478 U.S. at 317 n.5 (citing Standard Oil Co. v. United States, 267 U.S. 76, 79 (1925)).

Defendants next argue that the coinsurance program is not a commercial, profit-seeking enterprise, characteristics that it claims must be found before sovereign immunity is removed through a "sue or be sued" clause. In other words, defendants claim that HUD has not "assumed the status of a private commercial enterprise." In support of this proposition, defendants note that the HUD General Insurance Fund Programs, of which the coinsurance

---

[1] Congress nowhere expressly or even impliedly limited the force of the "sue or be sued" clause in § 1702.

5

program is a part, have operated at substantial monetary loss, and in fact were not designed to be profit-making enterprises. This contention must also fail. Nowhere in the case law is there a requirement that the government entity be profitable. Indeed Loeffler, the most recent case reiterating this exception to the no-interest rule, concerned the United States Postal Service, an entity that clearly does not qualify as "commercial" or profit-making.[2]

Because Congress waived HUD's sovereign immunity and because it intended for HUD's coinsurance program to assume the status of a private commercial enterprise, and in light of the lack of merit of defendants' other arguments,[3] an award of interest is allowable against defendants and judgment shall be so entered this date. Furthermore, because DRG's claim is liquidated, pre-judgment as well as post-judgment interest is appropriate.[4] The pre-judgment interest, as is customary in this Circuit, will be awarded at the legal rate of interest in the District of Columbia, which is 6%.

---

[2] Defendants also make the untenable argument that because the § 1702 waiver is limited to HUD's authorized functions, and HUD has no coinsurance authorizing function permitting it to pay interest, it cannot be liable for interest.

[3] See supra note 2. Defendants' argument under the Administrative Procedure Act also merits little discussion. There is no question that this Court has the power to grant interest on equitable claims. E.g., Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370 (D.C. Cir. 1976). Finally, the Court rejects defendants' claim that the 1988 Stipulation bars recovery of interest because it is clear from the face of the document that plaintiffs made no agreement to forbear from requesting interest.

[4] See Bituminous Casualty Corp. v. Lynn, 503 F.2d 636, 645 (6th Cir. 1974).

REPRODUCED AT THE NATIONAL ARCHIVES

D.C. Code § 28-3302(a) (1990 Supp.). However, that award shall not be made at this time; the Court will instead direct plaintiff to submit a proposed Judgment calculating the pre-judgment interest in the same manner as set forth in paragraph 4 of the Declaration of J. Roger Williams, Jr. (attached to Plaintiff's Motion for Reconsideration), applying the 6% rate rather than the variable post-judgment rate that plaintiff requested.

### III

Reilly Mortgage Group, Inc. ("Reilly") is a judgment creditor of plaintiff DRG and allegedly a recipient from DRG of an interest in the proceeds of this litigation. DRG purportedly induced Reilly to forestall the institution of enforcement proceedings to collect a judgment awarded by the Superior Court for the District of Columbia against DRG. Reilly claims that its interests have therefore not been adequately represented within the meaning of the intervention rule, Fed. R. Civ. P. 24(a)(2), because the current holder of the funds, the U.S. Government, is not subject to garnishment actions. In the alternative, Reilly seeks to participate as amicus to submit its arguments on the sole issue of whether the Government can withhold judgment funds pending administrative offset proceedings.

Reilly's interest is no more than an interest in the outcome of the action. In this type of case, where the proposed intervenor has an interest identical to the plaintiff's--in this instance, recovery of the total amount of funds from HUD--the proposed

intervenor faces the onerous task of overcoming the presumption that its representation by DRG is adequate. Reilly must make a "concrete showing of circumstances" that render the representation inadequate. Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986). Here, no such showing has been made. DRG has forcefully and effectively argued its case and more than adequately attempted to secure the full amount of interest from HUD. Reilly therefore has no basis on which to claim the need to intervene. See, e.g., FDIC v. Jennings, 107 F.R.D. 50 (W.D. Okl. 1985), aff'd, 816 F.2d 1488 (10th Cir. 1987). Even were Reilly to have an inadequately represented interest, the fact this action may decrease its ability to collect a judgment does not constitute a substantial impairment of an interest under 24(a)(2). Bottoms, 797 F.2d at 874.

Nor is amicus status warranted. As Reilly itself admits, its "participation as an amicus would not add to the legal arguments at issue," but would merely "afford the Court a chance to decide those arguments with a fuller appreciation of the context in which they arise." Motion for Leave to Intervene, at 6. Whether Reilly could have aided plaintiff or the Court in that regard is speculative but, in any event, in light of the above disposition of defendants' request to withhold the subject funds, its participation is unnecessary.

8

09/20/06  WED 09:07 FAX 301 457 7123    WASH NATL REC CTR    ☒020

## IV

Accordingly, for the reasons set forth above, it is hereby

ORDERED that defendants' motion for entry of judgment after remand and for permission to offset amounts from the amount owed HUD is hereby denied; it is

FURTHER ORDERED that plaintiff's motion for reconsideration and for entry of judgment is granted; it is

FURTHER ORDERED that defendants pay plaintiff $4,379,745.13 plus post-judgment interest at the statutory rate from the date of judgment pursuant to 28 U.S.C. § 1961(a); it is

FURTHER ORDERED that on or before June 21, 1991, plaintiff submit a proposed Judgment and calculations supporting that Judgment for the pre-judgment interest it is owed, based on 6% interest; it is

FURTHER ORDERED that defendants respond to plaintiff's proposed Judgment on or before July 3, 1991; and it is

FURTHER ORDERED that Reilly Mortgage Group, Inc.'s motion for leave to intervene or in the alternative to participate as amicus curiae is denied.

A separate Judgment accompanies this Memorandum and Order.


IT IS SO ORDERED.
June 12, 1991.

JOYCE HENS GREEN
United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUN 12 1991

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

```
                              )
DRG FUNDING CORPORATION,      )
                              )
            Plaintiff         )
                              )
        v.                    )     Civil Action No. 88-2202 (JHG)
                              )
SECRETARY OF HOUSING AND      )
URBAN DEVELOPMENT, et al.,    )
                              )
            Defendants.       )
_____)
```

### JUDGMENT

For the reasons set forth in the Memorandum and Order issued this date, judgment is hereby entered in favor of plaintiff DRG Funding Corporation and against defendants Secretary of Housing and Urban Development, et al., in the amount of $4,379,745.13 plus post-judgment interest at the statutory rate from the date of judgment pursuant to 28 U.S.C. § 1961(a).

IT IS SO ORDERED.
June 12, 1991.

JOYCE HENS GREEN
United States District Judge



86

**EXHIBIT 3**

09/20/06   WED 09:04 FAX 301 457 7123    WASH NATL REC CTR    ☒008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**JUL 02 1991**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DRG FUNDING CORPORATION | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 88-2202 |
| | ) (JHG/PJA) |
| SECRETARY OF HOUSING AND | ) |
| URBAN DEVELOPMENT, et al., | ) |
| | ) |
| Defendants. | ) |

## JUDGMENT

For the reasons set forth in the Memorandum and Order issued on June 12, 1991, judgment is hereby entered nunc pro tunc as of June 12, 1991, in favor of plaintiff DRG Funding Corporation and against defendants Secretary of Housing and Urban Development, et al., in the amount of $4,379,745.13 plus prejudgment interest of $653,169.58 plus postjudgment interest at the statutory rate from June 12, 1991, the date of judgment, pursuant to 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

July 1, 1991
DATE

JOYCE HENS GREEN
United States District Judge



☑ 009

REPRODUCED AT THE NATIONAL ARCHIVES

Distribution:

John K. Villa, Esquire
Mary G. Clark, Esquire
Williams & Connolly
839 Seventeenth St., N.W.
Washington, D.C. 20006

Allan R. Winn, Esquire
Kenneth G. Peters, Esquire
Colton & Boykin
1025 Thomas Jefferson St., N.W.
Suite 500 East
Washington, D.C. 20007

John D. Bates, Esquire
Jeffrey T. Sprung, Esquire
Assistant United States Attorney
Judiciary Center Building
4th Floor -- Room 4110
555 - 4th St., N.W.
Washington, D.C. 20001

Howard M. Schmeltzer, Esquire
Michael T. Robinson, Esquire
Office of General Counsel
Department of Housing and Urban Development
451 Seventh St., S.W.
Washington, D.C. 20410